## BRODIE AND KING vs. WATKINS AND WIFE.

1. CONVEYANCE: *Statutory covenants.*

   The words grant, bargain and sell in a deed of conveyance, when not limited by express words in the deed, must, under the statute, be construed as an express covenant against incumbrances done or suffered by the grantor.

2. ——————: *Recoupment. Defenses to action for purchase money, etc.*

   Where the grantees, in a deed containing covenants against incumbrances, permit the land to be sold under prior liens against the grantor, and procure a third party to buy it, for the purpose of strengthening their title, they will be permitted to recoup from the purchase money the amount expended in removing the incumbrance, but cannot set up title in the purchaser to defeat a recovery by the grantor of the residue of the purchase money.

3. PAYMENT: *Option to pay in money or property.*

   Where the vendee of real estate contracts to pay the purchase money in cash or by the delivery of cotton of a specified class at a designated place, as the payments become due, at his option, the right of election is not lost by the failure to deliver the cotton at the time and place where it is brought about by the conduct of the vendor.

4.   *Abatement by death of a party pending appeal, etc.*
   The death of a party to the appeal having been suggested subsequent to the
      decree of this court, ordered that further proceedings in execution of the
      decree, so far as affecting his interest, be suspended until the cause is re-
      vived against his legal representatives.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.

*Compton, Parsons & Martin,* for appellants.

*Coody & McRae* and *Met. L. Jones, contra.*

PINDALL, SP. J.:

This suit was commenced on the chancery side of the Jeffer-
son Circuit Court, 16th August, 1872, by the appellees, against
the appellants, George W. King and James K. Brodie, the object
and general nature of which was to obtain judgment for the
amount of three notes, for purchase money executed by appel-
lants to appellees, and to enforce a vendor's lien upon a planta-
tion in Jefferson County, sold to the appellants by the appellees.

The deed conveying the land to defendants, and the notes exe-
cuted by them are exhibited with the complaint.

The deed is dated 22d of February, 1870, and recites that in
consideration of the sum of $10,000 then in hand paid to said
Thomas Watkins, and upon the other considerations and condi-
tions thereinafter written, the said Thomas Watkins and Marga-
ret E. Watkins, his wife, had that day bargained and sold and
by said deed did grant, bargain, sell, deliver and convey to
George W. King and James K. Brodie, the lands described, and
certain personal property, also described, contains covenants by
the grantors to the grantees of seizen, right to convey, and gen-
eral warranty, with relinquishment of dower by former grantor.

The deed proceeds to recite : ' That said conveyance is made
upon the further consideration and condition, that the said King
and Brodie are further indebted in the sum of $30,000 for said

land and property, evidenced by three several promissory notes, each for the sum of $10,000 due respectively on the 1st days of March, 1871, 2 and 3, all bearing interest at the rate of ten per cent. per annum from 1st of March, 1870, each of which notes may, at the option of King and Brodie, be paid and fully discharged, by delivery to said grantors, or to their order, on the bank of the Arkansas river, ready for market, in good order and condition, 105 bales of cotton for each note, to average 500 pounds each, and to class one-third low middling, one-third good ordinary and one-third ordinary, according to New Orleans classification; or that said notes might be, at the option of said King and Brodie, discharged by paying $30,000 cash at any time before the 1st October, 1870, and it is provided that upon the payment of said notes said conveyance was to become absolute and unconditional, but upon failure to pay either of said notes in cash or cotton at maturity, Watkins might take possession of said land and stock and sell the same for the payment of the purchase money.

The three notes exhibited all bear even date with said deed, and for $10,000 each, with interest from 1st March, 1870, at ten per cent. per annum, due 1st March, 1871, 1872 and 1873, respectively, and each contains the provision that payment might be made by delivery of 105 bales of cotton in accordance with the stipulations in the deed, and the one first due contains an endorsement that it was to be credited, at its maturity, with $4,950, being the Archard note assigned to Watkins by King.

The defendants, King and Brodie, filed their joint answer to this complaint, 19th November, 1872, in which they set up two defenses to the suit.

The first defense is in the nature of a plea of failure of consideration for the notes sued on.

They say, that at the date of the contract and conveyance, there existed two encumbrances upon the title to the land. That

*Vol. xxxi.—21.*

one of the encumbrances was a decree of the Circuit Court of the United States, for the Eastern District of Arkansas, rendered in favor of Lou D. Caldwell, and against the plaintiffs, in May, 1868, which constituted a lien on 344 acres of the land, for purchase money due thereon by Watkins and wife; that in June, 1870, a supplemental decree was rendered in said cause, in favor of James H. Core, who had become the owner of said decree, directing a sale of said 344 acres, to pay a balance due on said decree of $3,000, and that on the 10th day of October, 1870, said land was sold under said decree by the marshal of said court, and purchased by one Peter R. Brodie, for the sum of $3,300, and the said lands were conveyed to him by deed.

That they notified plaintiffs of this sale before it took place, and demanded of them to pay off said decree, and protect defendants' title. That plaintiffs wholly failed and refused to do so.

That the other incumbrance on the title, was a judgment of the Circuit Court of Jefferson County, rendered in November, 1869, in favor of M. L. Bell, and against the plaintiffs and one James H. Core, which constituted a lien on all of said land, and that execution issued upon said judgment, and the said lands were sold to satisfy the same, on the 10th day of April, 1871, to said Peter R. Brodie, for $4,410, and said Brodie obtained a certificate of purchase therefor, but that defendants were not advised whether he ever received a deed or not, that plaintiffs had a year to redeem said land, and defendants urged them to do so, but that they wholly failed and neglected to redeem the same.

That the legal title to the whole of said lands, was now in the heirs of Peter R. Brodie, the said Peter R. having since died, wherefore, they say, plaintiffs' warranty of title had wholly failed, and that the consideration for said notes had wholly failed. They charge plaintiffs are wholly insolvent, and if they should have to pay said money, it would be wholly lost.

For a second defense to said suit, the defendants say, that they had more than enough cotton of the quality described, on the bank of the river, at the maturity of said first and second notes, to pay the same, according to the stipulations of the deed, (the third note was not due at the time of the answer) and tendered it to the plaintiffs' agent, and demanded that plaintiffs should remove said incumbrance. Plaintiffs refused to accept the cotton on these conditions. That they have always been ready and willing to pay said notes, according to the stipulations in the deed, if plaintiffs would remove the incumbrances. That cotton was not worth exceeding $60 per bale at the maturity of said notes, as an average price.

On December 9th, 1872, plaintiffs amended their original complaint and aver, that these incumbrances were well known to defendants at the time of the contract and conveyance, and that they promised by parol to discharge said Core decree, and deduct the amount from their indebtedness for the lands, that Brodie represented that he could, or had arranged to let Core have some land in satisfaction of said decree.

That Bell agreed, if plaintiff, Watkins, would pay $5,000 on his judgment, out of the cash payment, he would wait for the residue, about $4,000, until the maturity of the first note, that he accordingly paid him the $5,000, and deposited the note with him for defendants to pay to him at maturity, that all parties agreed to this arrangement, that the residue on said note was amply sufficient to pay Bell's judgment.

That defendants failed to pay or discharge said Core decree, and plaintiffs, in ignorance of their failure, and relying on their promise, did not do so, and 344 acres of the land were sold under said decree; that on the day of sale defendant, Brodie, promised to pay off said decree, but proposed to let the land sell, and buy it in, to cut off an outstanding title; that plaintiffs agreed to this

arrangement. But defendants failed to buy in the lands, but procured Peter R. Brodie to buy them in, in his own name, and charges that this was done for the purpose of defrauding plaintiffs; that defendants failed to pay the first note at maturity, and the remaining lands were sold under Bell's judgment, on 10th April, 1871, and by the procurement of defendants, were purchased by Peter R. Brodie, with like fraudulant purpose. That the land was purchased at both sales for defendants, with means furnished by them for that purpose, and that Peter R. Brodie well knew of the agreement, and that the lands were permitted to be sold for benefit of defendants, and to strengthen their title, and that the amount of the purchases was to be credited upon the indebtedness of his brother and King, to the plaintiffs.

That said Peter R. Brodie had departed this life, leaving a widow, Elizabeth Brodie, and one son, Peter R.; makes these parties defendants to the suit; prays that the title of Peter R. Brodie's heirs be cancelled, and the title of defendants, King and James K. Brodie, be quieted; and for judgment against defendants for amount of said notes, less the sums for which said lands were sold, and for sale of the lands to satisfy the same after the third note became due.

Plaintiffs filed supplemental complaint, bringing that fact to the attention of the court, and further alleging that King and Brodie were still in possession of the lands, and praying for judgment on all the notes, and sale of lands, etc.

The infant heir of said Peter R. Brodie formally answered by guardian ad litem, invoking the protection of the court.

Elizabeth Brodie, widow of Peter R., answered, denying any knowledge of the facts, and stating that, after her qualification as administratrix of her husband, she found the marshal's deed, the certificate of purchase at sheriff's sale, and the receipt of M L. Bell for the amount of the purchase under his judgment,

among the papers of her late husband; she further states that, upon inquiry, she learned that said lands had been leased by her intestate to J. K. Brodie, and she had since made no disposition of them, other than to collect some arrears of rent.

On November 20th, 1873, the defendants, King and Brodie, answered the amended and supplemental complaint. They positively deny that they ever agreed to pay the Core decree, or the Bell judgment, or to assume any liability therefor, and say that they had the right to pay said notes in cotton, and believed that the payment credited on the first note would about extinguish it when reduced to a cotton basis. They deny that the note was left with Bell for the purpose stated.

They aver that Watkins expressly agreed to pay off the Core decree and the Bell judgment, and protect their title.

They deny that they ever promised to buy in the land for plaintiffs, or to advance the money therefor. On the contrary, they say Watkins was present at said sale under the decree, and tried to borrow the money to pay it off, but failed to do so.

They deny that Peter R. Brodie purchased the land for them, but aver they believe he purchased for himself.

They again say they have always been ready and willing to pay said notes at the maturity thereof, in cotton, according to their stipulations, if the plaintiffs would remove the incumbrances, in accordance with their obligations. That they had, on the bank of the river, at the place designated, at the maturity of each of said notes, sufficient cotton, of the class specified, to pay the same, and that the average price of said cotton, for each of said three years, did not exceed $60 per bale. Defendants further say that they do not owe exceeding the value of the cotton at the respective dates, and this they offer to pay when the incumbrances are removed.

The depositions of various witnesses were taken, to sustain the allegations of the respective pleadings, and the testimony in the record is quite voluminous, and, to some extent, conflicting.

The cause was heard at the November term, 1874. The court decreed for the plaintiffs, and gave them a judgment for the amount of the several notes, and interest thereon, after deducting the credit of $4,950 endorsed on the first note, the $3,300 and the $4,410 paid at the marshal and sheriff's sale, and that the title of Peter R. Brodie, under such sales, inured to the benefit of defendants, and that the same should be cancelled, and decreed the lands to be sold to satisfy the same.

The defendants appealed to this court.

The questions which arise upon the first defense pleaded, are principally questions of fact.

The deed contains the words "grant, bargain and sell," and the statutory meaning of these words is not limited by any express words in the deed, and, hence, the covenant must be construed as an express covenant against incumbrances done or suffered from the grantors. Sec. 829, Gantt's Digest.

The decree and judgment existing at the time of the conveyance constituted an incumbrance upon the title of grantors, and their covenant was broken by the sale of the land under these incumbrances, unless the defendants, by a valid agreement, undertook to remove them.

After a careful examination of the allegations and evidence, we think that it is not true, as alleged by plaintiffs, that defendants undertook to remove these incumbrances, either at the time of conveyance, or at any other time. It is not, therefore, necessary for us to consider what would be the effect of the parol agreement set up in the amended complaint.

We think that the evidence shows that, at the time of the sale and conveyance, it was known that Core would not take the

amount of his decree in land, but was pressing for his money, and that Bell was solicitous to collect the amount of his judgment; and that defendants refused to become responsible for them, or to assume any obligations that would prejudice their right to pay for the land in cotton, at the price agreed upon, and refused to consummate the trade unless plaintiffs would arrange these incumbrances.   That the plaintiff Watkins induced Bell to accept $5,000 of the cash payment, and wait twelve months for the balance, so that he could pay Core off with $3,000, as he either had used, or needed, the other $2,000 for some purpose of his own; and that he induced defendants to complete the trade by promising them to pay the Core decree, and to remove it from their title.   That the balance of Bell's judgment should be paid out of the cotton received on the first note, and that it was contemplated that a sale under that judgment should take place, to remove an outstanding title to one-half of the land, unless Watkins succeeded in getting up that title before the first note was due.

The evidence shows Watkins failed to discharge the Core decree, as he had promised to do, and the land so bound by that decree was advertised for sale.   That Watkins expected to get defendants to advance the money to pay off the decree, or to buy in the lands under it for his benefit, but failed to get from them a binding promise to do either.

The evidence shows that Peter R. Brodie contemplated purchasing these lands for himself and George Renton, with money to be advanced by Renton, and that he and Renton attended the sale with some such purpose; but we think this design was abandoned, perhaps, because the interest of his brother and his neighbor, King, would be sacrificed by such a course.

Peter R. Brodie bought in the lands in his own name, but they were paid for at the sale under the Core decree, with money

raised on the draft of King and James K. Brodie, and not with money to be furnished by Renton, as was contemplated, although Renton was present and had the money to advance for Peter R. if he had purchased for himself.

We think it fairly deducible, from the evidence, that the purchase was made by Peter R. Brodie to protect the land from the outstanding title, as contemplated when King and Brodie purchased the land, and that this purchase was made for the benefit of King and James K. Brodie ; that the land was paid for with money raised by them, and that it was not the design of Peter R. Brodie and King, at that time, to hold the land adversely to Watkins' title.

We think the conduct of the defendants on the day of the sale under the Core decree—their connection with Watkins, being grantees of his title, in possession under him and largely indebted to him for purchase money—makes it inequitable for them to hold the land adversely to the title of Watkins, and that they are only entitled to receive a credit upon their indebtedness by the amount of these incumbrances, and we think the legal effect of this sale impressed the same character on the sale and purchase under the Bell judgment, and the two purchases must be construed as parts of the same design. A sale under this last judgment, in certain contingencies, we have seen, was contemplated at the time of the conveyance for the purpose of strengthening defendant's title.

The after conduct of the parties tends to strengthen this impression: The facts that King became interested with Peter R. Brodie, that James K. Brodie yielded possession to them without suit, without even inquiring whether his brother had obtained a deed under the Bell judgment, and that he leased. the lands from King and Peter R.

The tender of the cotton, and repeated offers of all the parties to carry out their original contract with Watkins upon the just

terms that he would conform to his obligations; their declarations to several witnesses, all confirm the impression that these purchases were made to protect King and Brodie.

Upon the facts disclosed by the evidence, we think, there is no error in the decree of the Circuit Court treating the title of Peter R. Brodie's heir, as the title of King and James K. Brodie, and in crediting King and Brodie with the amount paid for the lands at the two sales.

But the decree of the court is erroneous so far as it renders a judgment in money against the defendants without allowing them their option to pay in cotton according to their contract.

The defendants aver that they have always been ready and willing to pay in cotton, if the incumbrances were settled, and the proof is that they have had the cotton on hand at the maturity of each note, and claimed their right to pay in this way, and they have done nothing to forfeit this right.

It is insisted that defendants should have delivered the cotton on the day specified without reference to their reason, or excuse, for non-delivery, or they forfeited their option. If the conduct of plaintiffs was such as to preclude them from exercising this option, their privilege would not be forfeited, or if at any time of payment there was nothing due, defendants could not be expected to pay anything either in money or cotton.

The first note, due March 1st, 1871, contained an endorsement signed by Watkins, that it was to be credited at maturity with $4,950. This endorsement was never delivered to or accepted by defendants, is not introduced by them, or relied on by them, and is not signed by them; in no sense can it be considered conclusive upon them.

The evidence of King and Brodie, both, shows that the contract was that it was to be considered a payment in cotton, and if the price ruled lower they were to have the advantage of it, if higher they were to make good the deficiency.

Before the first note became due the defendants were forced by the bad faith of Watkins, to advance $3,300 to remove an incumbrance he had agreed to pay off, and they were entitled to interest on this sum from 10th October, 1870, to 1st March, 1871, making another credit of $3,377, and, with the credit endorsed, a total amount of $8,327. The value of the 105 bales of cotton due at that date was, according to one witness, $5,687.50, and, according to another witness, $5,731.25. They had the cotton and tendered it to plaintiff's agent, and demanded of him to remove, or settle the incumbrance. Nothing was due to the plaintiffs, on the contrary a considerable over-payment would have been carried over to the maturity of the next note, and the reply of defendants to plaintiff's demand for 27,750 pounds of cotton, that they would not turn over any more cotton until plaintiff complied with his obligations, was justified by the above figures.

Before the second note become due, defendants had been compelled to advance $4,410, to pay off the Bell judgment, and they were entitled to interest on this sum from 10th July, 1871, the time they paid it; the value of cotton at this time is not shown in the evidence, but the allegation is that it was worth no more than $60 per bale, as an average price of the grades required, or $6,300, a sum considerably less than the payments already made. If this allegation be true the plaintiff was not entitled to anything, at that date, either in money or cotton.

Before the last note was due this suit was commenced, and the matter was being litigated for the large sums claimed improperly by the plaintiffs, the defendants clearly had the right to have the amount paid to redeem the incumbrances allowed to them, the wrongful act of plaintiffs in forcing them to advance so largely in money cannot prejudice their right to have the notes settled upon the cotton basis.

Brodie and King vs. Watkins and Wife.

The plaintiffs are entitled to a judgment for the value of the cotton found due them on the notes, according to the above principles, and interest thereon at six per cent. per annum.

The decree of the court below will be reversed, at the cost of appellees.

But, inasmuch, as no proof was taken of the value of cotton on the 1st March, 1872 and 1873, and the estimate of the two witnesses differs as to the value in 1871, the cause will be submitted to the clerk of this court, who will, as a special master, be instructed to examine such witnesses as the parties may bring before him, as to the value of cotton at the maturity of the several notes; he will state an account between them, charging plaintiffs with the $4,950 credited on the first note, as of the maturity of that note, and the $3,300 and six per cent. interest to the same time, credit them with the value of cotton, of the various grades at that date, as he shall ascertain from the witnesses. He will allow defendants six per cent. interest on the overplus until the first day of March, 1872, and, also, credit them by the $4,410 paid Bell, 10th July, 1871, and six per cent. interest on this sum, until the maturity of second note; he will credit this amount with value of the 105 bales due on that day, and if it still leaves an over-payment, the amount of such over-payment will be carried to the third note and bear six per cent. interest, until March 1, 1873, he will ascertain the value of the 105 bales of cotton at this date, deduct whatever amount may be due them on the over-payment of 1872, and charge them six per cent. interest from March 1, 1873, and report the account to this court.

A final decree for the enforcement of this amount, and a disposition of the title will be rendered upon the coming in of the report.

The report of the clerk, as Special Master, having been filed and approved, the following statement was made, and directions given by :

PINDALL, SP. J.:

The testimony taken by the Master, shows that at the maturity of the first note described in the pleadings, the value of the 105 bales of cotton, by which that note could be discharged, was $6,081.25.

The credit endorsed on that note, and the amount to which appellants were entitled, for money advanced, to buy the land under the Core decree, and the interest thereon to that date, amounted to $8,328.10, showing an over-payment of $2,246.85. This sum and interest thereon to the maturity of the second note, and the amount advanced to purchase under the Bell judgment, and interest thereon to the same time, amounted to $6,962.18. The evidence taken by the Master, shows that the value of the 105 bales by which this note could be discharged, at the maturity of the note, was $9,537.50, deducting the amount of the credits from this sum, leaves a balance of $2,575.32 due on the second note.

The evidence shows that the value of the cotton, at the maturity of the third note, was $8,411.87, and appellees are entitled to a decree for the amount of these two sums, and six per cent. interest thereon.

The appellant, King, having died on the 5th day of May, 1877, the decree will be entered as of the 17th February, 1877, the day upon which the original opinion in the cause was delivered, and before the death of King.

The amount of the recovery will then be as follows:

Brodie and King vs. Watkins and Wife.

Balance due upon second note, March 1, 1872,... $2,575.32
Int. to Feb. 17, 1877, 4 years, 11 months, 16 days,    766.58
Am't of third note, March 1, 1873,...................  8,411.87
Int. to Feb. 17, 1877, 3 years, 11 months, 16 days,  1,999.19

Amount to Feb. 17, 1877,...............$13,751.96

A decree will be rendered in favor of appellees, and against appellants for this amount, and the same be decreed a lien on the lands described in the complaint and proceedings.

The death of King having been suggested on the record, the suit has abated as to him. No order of sale will be made until his heirs and legal representatives are made parties.

The cause will be continued, with leave to revive against the administrator and heirs of King, when ascertained.

All the title and interest acquired by Peter R. Brodie at the sale under the Core decree, and the Bell judgment, is hereby divested out of the said Peter R. Brodie, Jr., and Elizabeth Brodie, the heir and widow of Peter R. Brodie, and vested in James K. Brodie, and the heirs and legal representatives of George W. King, and when the above amounts are paid, all the right, title and interest of Thomas Watkins, and Margaret E. Watkins, his wife, or either of them, shall vest in the said James K. Brodie, and the heirs and representatives of George W. King, and their title to the land in controversy be quieted and confirmed.

The clerk of this court will be allowed a fee of $50 for his services as master, to be taxed as costs in the case.

The costs of the suit, both here and in the court below, will be adjudged against Watkins and wife, and paid out of the proceeds of the decree.

The Hon. William M. Harrison, Associate Justice, did not sit in this case.